UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

EDWARD MCMILLAN                                        CIVIL ACTION

versus                                                 NO. 12-1492

ROBERT TANNER, WARDEN                                  SECTION: "H" (1)

# REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Edward McMillan, is a state prisoner incarcerated at the B.B. "Sixty" Rayburn Correctional Center, Angie, Louisiana. On July 9, 2008, he was convicted of possession with intent to distribute cocaine under Louisiana law.[1] On July 21, 2008, he was sentenced to a term of fifteen years imprisonment with the first two years of that sentence to be served without benefit of parole, probation, or suspension of sentence.[2] On December 4, 2008, he pleaded guilty to being

---

[1] State Rec., Vol. IV of V, transcript of July 9, 2008, p. 410; State Rec., Vol. I of V, minute entry dated July 9, 2008; State Rec., Vol. I of V, jury verdict form.

[2] State Rec., Vol. IV of V, transcript of July 21, 2008; State Rec., Vol. I of V, minute entry dated July 21, 2008.

a second offender and was resentenced as such to a term of twenty years imprisonment without benefit of probation or suspension of sentence.³ On December 8, 2009, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction; however, because the trial court failed to vacate the original sentence before imposing the enhanced sentence, the matter was remanded for resentencing.⁴ The Louisiana Supreme Court then denied petitioner's related writ application on June 18, 2010.⁵ In the interim, on January 4, 2010, the state district court corrected its error by vacating the original sentence and resentencing petitioner as a second offender to a term of twenty years imprisonment without benefit of probation or suspension of sentence.⁶

On or after March 22, 2011, petitioner filed an application for post-conviction relief with the state district court.⁷ That application was denied on April 12, 2011.⁸ The Louisiana Fifth Circuit Court of Appeal refused to consider petitioner's related writ application because it was

---

³ State Rec., Vol. IV of V, transcript of December 4, 2008; State Rec., Vol. I of V, minute entry dated December 4, 2008; State Rec., Vol. I of V, guilty plea form.

⁴ State v. McMillan, 30 So.3d 36 (La. App. 5th Cir. 2009) (No. 09-KA-415); State Rec., Vol. I of V.

⁵ State v. McMillan, 38 So.3d 321 (La. 2010) (No. 2009-KO-2831); State Rec., Vol. I of V.

⁶ State Rec., Vol. I of V, minute entry dated January 4, 2010.

⁷ State Rec., Vol. I of V. The United States Fifth Circuit Court of Appeals has held that federal *habeas* courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana prisoner's *pro se* state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006). Here, that date cannot be gleaned with certainty from the record; however, because the application was dated March 22, 2010, it obviously was placed in the mail no earlier than that date.

⁸ State Rec., Vol. I of V, Order dated April 12, 2011.

improperly filed[9] and also refused to consider his request for rehearing.[10] On April 27, 2012, the Louisiana Supreme Court then denied petitioner's related writ application.[11]

On or before June 11, 2012, petitioner filed the instant federal application for *habeas corpus* relief claiming that there was insufficient evidence to support his conviction.[12]

## I. Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> On April 11, 2007, Detective Elvan Modica of the Jefferson Parish Sheriff's Office and several other police officers were on patrol in the Bunche Village area of Jefferson Parish. According to Detective Modica, Bunche Village is a high crime area known for drug activity. At approximately 1:15 AM, Detective Modica was driving an unmarked black Ford Explorer with his partner, Sergeant Todd Vignes. Detective Modica and Sergeant Vignes were patrolling on North Elm Street. Detective Modica observed the defendant engage in a hand-to-hand transfer with a woman later identified as Elaine Lewis ("Lewis"). At the hearing on the motion to suppress, Modica explained that he saw Lewis reach her hand into the defendant's hand and take an object out of his hand. Lewis then looked at the object for a second, put the object in her pocket, and walked away. Detective Modica believed that the defendant and Lewis had just engaged in a drug transaction. However, Detective Modica did not witness any money changing hands. In addition, Vignes did not observe the transaction.

---

[9] State v. McMillan, No. 11-KH-477 (La. App. 5th Cir. June 7, 2011); State Rec., Vol. I of V.

[10] State v. McMillan, No. 11-KH-624 (La. App. 5th Cir. July 14, 2011); State Rec., Vol. I of V.

[11] State *ex rel.* McMillan v. State, 86 So.3d 616 (La. 2012) (No. 2011-KH-1802); State Rec., Vol. I of V.

[12] Rec. Doc. 3. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). That date is not apparent from the record; however, the application was received by the Court on June 11, 2012.

The man and the woman began to walk towards Detective Modica's vehicle. Detective Modica radioed for backup. Detective Sean Cursain responded to the call. As Detective Cursain approached Detective Modica's vehicle, he saw the defendant and Lewis walking towards the street where Detective Modica was parked. Detective Cursain was also driving an unmarked vehicle, but he had a flashing blue light in the dashboard of his vehicle. As soon as Detective Cursain made eye contact with the defendant, the defendant ran toward the apartment complex behind him. Lewis did not attempt to flee. She was detained and handcuffed to a chain link fence by Sergeant Curtis Matthews, Detective Cursain's partner.

Detectives Modica and Cursain, along with Sergeant Vignes thereafter began to pursue the defendant. Detective Modica and Sergeant Vignes saw the defendant open a door to an apartment in the apartment complex. As the defendant opened the door, Detective Modica and Sergeant Vignes saw the defendant drop an object on the ground. The defendant then ran inside the apartment and locked the door. When Detective Modica reached the door, he was able to retrieve the object that the defendant dropped. The object was an off-white rock wrapped in plastic. Charles Kron, an expert in the field of drug identification and analysis, testified at trial that the rock dropped by the defendant tested positive for cocaine.

Detective Modica kicked the door of the apartment open and ran into the apartment alongside Sergeant Vignes. Sergeant Vignes examined the kitchen and a front bedroom. Detective Modica encountered the defendant in a rear bedroom. Detective Modica testified at trial that one of the windows in the bedroom was open. Detective Modica attempted to detain the defendant, but the defendant pushed him and the two men became engaged in a struggle. During the course of the struggle, Modica noticed that the defendant's right hand was clinched and that plastic was protruding from the defendant's hand. The defendant managed to break free from Modica's grasp and throw a bag out of the window. At that time, Sergeant Vignes arrived and helped Detective Modica handcuff and overpower the defendant.

After Detective Modica and Sergeant Vignes had secured the defendant, Detective Modica walked outside to retrieve the bag that the defendant had dropped out the window. Sergeant Vignes remained in the apartment and located the bag with his flashlight. Detective Modica was eventually able to retrieve the bag with Sergeant Vignes's assistance. The bag contained 26 individually wrapped off-white rocks weighing approximately seven and a half grams. At trial, Charles Kron testified that the rocks tested positive for cocaine.

Detective Cursain asked Shamika Jolla ("Jolla") for consent to search the apartment. Jolla was the lessee of the apartment and the mother of the defendant's children. Jolla gave her consent and executed a Consent Search Form. While searching of the apartment, officers discovered one off-white rock on the floor of the bedroom where the defendant was apprehended. The rock later tested positive for cocaine.[13]

## II. Timeliness

The state first argues that petitioner's federal application is untimely. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his underlying criminal judgment becomes "final."[14] On that point, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. Roberts v. Cockrell, 319 F.3d 690, 693 (5th Cir. 2003).

Butler v. Cain, 533 F.3d 314, 317 (5th Cir. 2008).

As noted, the Louisiana Supreme Court denied petitioner's writ application on direct review on June 18, 2010. As a result, for AEDPA purposes, his state criminal judgment became

---

[13] State v. McMillan, 30 So.3d 36, 39-40 (La. App. 5th Cir. 2009) (No. 09-KA-415); State Rec., Vol. I of V.

[14] Although 28 U.S.C. § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are not applicable in the instant case.

final, and his federal limitations period therefore commenced, no later than September 16, 2010. See id. at 317-18. That federal limitations period then expired one year later, unless the deadline was extended through tolling.

The Court first considers statutory tolling. Regarding the statute of limitations, the AEDPA expressly provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

After one hundred eighty-six (186) days elapsed, petitioner tolled his federal limitations period by filing a post-conviction application with the state district court on March 22, 2011. Therefore, the Court finds that the limitations period was tolled until May 12, 2011, when petitioner's thirty-day period expired for properly filing a writ application with the Louisiana Fifth Circuit Court of Appeal to challenge the denial of that motion. See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004); Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001); see also Louisiana Uniform Rules of the Courts of Appeal Rule 4-3.

The Court notes that petitioner did in fact file a related writ application with the Court of Appeal; however, that application did not toll the limitations period because it was not "properly filed." The United States Supreme Court has explained: "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz v. Bennett, 531 U.S. 4, 8 (2000) (footnote omitted). The Court of Appeal expressly noted that petitioner's

application did not comply with the applicable court rules and therefore refused to consider it on that basis, holding:

> ***WRIT REFUSED***
>
> Relator has included neither a copy of his Application for Post-Conviction Relief nor the district court's order denying such. See Uniform Rules, Courts of Appeal, rule 4-5(C)(6) and (8). Therefore, we are unable to review the ruling of the district court.[15]

Petitioner then filed an application seeking rehearing of that decision which was inexplicably docketed as a separate case. However, the Court of Appeal refused to reconsider its prior ruling, holding: "Pursuant to U.R.C.A. 2-18.7, an application for rehearing of a writ will only be considered where the court has granted that application on the merits. Because this writ was not granted, a rehearing will not be considered in this case."[16] In that these two Court of Appeal applications were not "properly filed," the statute of limitations clearly ran untolled for an additional ninety-two (92) days.

The only remaining state application for post-conviction or other collateral review that need be considered is petitioner's related Louisiana Supreme Court writ application. That application was pending from on or about August 13, 2011,[17] until was denied on April 27, 2012.[18]

---

[15] State v. McMillan, No. 11-KH-477 (La. App. 5th Cir. June 7, 2011); State Rec., Vol. I of V.

[16] State v. McMillan, No. 11-KH-624 (La. App. 5th Cir. July 14, 2011); State Rec., Vol. I of V.

[17] That application was undated and it is unclear when it was placed in the prison mail system; however, it bore a notation by the clerk's office indicating that it was postmarked on August 13, 2011. See State Rec., Vol. V of V.

[18] A petitioner receives no additional tolling credit for the period during which he could have sought review by the United States Supreme Court with respect to the denial of post-conviction relief. Lawrence v. Florida, 549 U.S. 327, 332 (2007); Ott v. Johnson, 192 F.3d 510, 512-13 (5th Cir. 1999).

If that filing tolled the federal limitations period, petitioner's federal application is timely;[19] however, if it did not, this federal application is untimely.[20]

The state contends that the federal limitations period was not tolled by the Louisiana Supreme Court filing. However, the state offers no explanation or citation of legal authority for that contention. On the other hand, petitioner likewise offers no argument as to why the writ application did toll the limitations period. The Court must therefore struggle with this issue without the assistance of the parties.

One could perhaps argue that if, as here, a post-conviction application ceases to be "pending" at any point, it cannot be revived or resurrected for tolling purposes by a subsequent related filing. While that argument might at first blush seem to have some merit, the United States Fifth Circuit Court of Appeals has apparently taken the contrary view. For example, in Melancon v. Kaylo, 259 F.3d 401 (5th Cir. 2001), the Fifth Circuit expressly concluded that, despite a period during which Melancon's post-conviction application was clearly no longer pending, a later "properly filed" writ application relating to the original application "tolled all *subsequent* proceedings related to that application." Id. at 407 (emphasis added).

The situation here is arguably analogous. Petitioner's Louisiana Supreme Court application was clearly filed in connection with the state post-conviction proceedings, and this Court

---

[19] Under this scenario, two hundred seventy-eight (278) days elapsed untolled prior to the filing, and forty-four (44) days elapsed between the date it was denied and the date on which petitioner filed this federal application. Because a total of only three hundred twenty-two (322) days elapsed untolled, the federal application would be timely.

[20] Under this scenario, in which no statutory tolling credit is given for the Louisiana Supreme Court writ application, a total of five hundred eighty-one (581) days elapsed untolled between the date petitioner's conviction became final and the date he filed his federal application. Because three hundred sixty-five (365) days elapsed untolled, the federal application would be untimely.

is aware of no basis for finding that it was not "properly filed" within the meaning of § 2244(d)(2). It was filed within thirty days of the Court of Appeal's decision in case number 11-KH-624 and was therefore timely. Moreover, the Louisiana Supreme Court denied the application without assigning any reasons whatsoever, and so there is no indication that the application was not considered due to any other procedural irregularity. Therefore, it is at least debatable that the federal limitations period was tolled while the Louisiana Supreme Court writ application was pending.

In light of that consideration, and mindful that courts "must be cautious not to apply the statute of limitations too harshly," Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), this Court declines to recommend that this petition be dismissed as untimely, especially in light of the fact that, as the state correctly notes, petitioner's claim is clearly subject to dismissal on the merits for the following reasons.[21]

### III. Petitioner's Claim

Petitioner's sole claim is that there was insufficient evidence to support his conviction. That claim has no merit.[22]

---

[21] The state also argues that petitioner's claim is procedurally barred. However, a federal court need not decide whether a claim is procedurally barred if the claim clearly fails on the merits. Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at *1 n.5 (E.D. La. July 30, 2008); Lee v. Cain, Civ. Action No. 06-9669, 2007 WL 2751210, at *9 (E.D. La. Sept. 18, 2007).

[22] The state district court did not address the merits of petitioner's claim because it found the claim procedurally barred. State Rec., Vol. I of V, Order dated April 12, 2011. The Louisiana Fifth Circuit Court of Appeal likewise rejected petitioner's related writ applications on procedural bases. State v. McMillan, 38 So.3d 321 (La. 2010) (No. 2009-KO-2831); State v. McMillan, 30 So.3d 36 (La. App. 5th Cir. 2009) (No. 09-KA-415); State Rec., Vol. I of V. The Louisiana Supreme Court gave no explanation for its ruling. State ex rel. McMillan v. State, 86 So.3d 616 (La. 2012) (No. 2011-KH-1802); State Rec., Vol. I of V. Because there is no indication that the state courts adjudicated petitioner's claim on the merits, the deferential AEPDA standards of review do not apply, and the Court will therefore conduct a *de novo* review of the claim. See Powell v. Quarterman, 536 F.3d 325, 343 (5th Cir. 2008); Graves v. Dretke, 442 F.3d 334, 339 (5th Cir. 2006).

Claims challenging the sufficiency of the evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010).

In the instant case, petitioner was charged with possession with the intent to distribute cocaine under La.Rev.Stat.Ann. § 40:967(A),[23] which provides in pertinent part: "[I]t shall be unlawful for any person knowingly or intentionally: ... To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled

---

[23] State Rec., Vol. I of V, bill of information.

dangerous substance or controlled substance analogue classified in Schedule II." La.Rev.Stat.Ann. § 40:967(A)(1). Cocaine is a Schedule II controlled substance. La.Rev.Stat.Ann. § 40:964.

Under Louisiana law, "[i]n order to support a conviction for possession with intent to distribute cocaine, the State must prove that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it." State v. Henry, 27 So.3d 935, 942 (La. App. 5th Cir. 2009). "Guilty knowledge is a state of mind and need not be proven as fact but rather may be inferred from the circumstances." Id. (quotation marks omitted). Further:

> Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). Specific intent is a legal conclusion to be determined by the trier of fact. Specific intent to distribute may be inferred from the circumstances of a transaction and from the actions of the defendant. A defendant's intent to distribute may be established by proving circumstances surrounding the defendant's possession, which gave rise to an inference of such intent. These circumstances include: (1) the defendant's previous attempts to distribute; (2) whether the drugs are packaged in a form consistent with distribution; (3) the amount of the drugs seized; (4) expert testimony indicating the amount of the drugs recovered is not consistent with personal use; and (5) paraphernalia evidencing an intent to distribute, i.e., scales and plastic bags.

Id. at 943 (footnotes and quotation marks omitted).

In this case, petitioner argues that there was no fingerprint evidence to prove his guilt. However, Jackson does not require such evidence to support a conviction. Matthew v. Workman, 577 F.3d 1175, 1185 (10th Cir. 2009). "[T]he focus of a Jackson inquiry is not on what evidence is missing from the record, but whether the evidence in the record, viewed in the light most favorable to the prosecution, is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt." Id. Here, there was abundant evidence sufficient to support

petitioner's conviction for possession with the intent to distribute cocaine. For example, Detective Modica testified that on April 11, 2007, while patrolling a federally-designated "high crime area," he witnessed petitioner and a woman engage in a "hand-to-hand transaction" which, based on their furtive behavior, the location, and his experience as a narcotics officer, he found suspicious. When petitioner then saw Detective Cursain's vehicle, he fled the scene. Modica gave chase and retrieved one item (a plastic bag containing one "off colored white rock") which petitioner discarded at an apartment door and another item (a plastic bag containing twenty-six individually wrapped "off white rocks") which he dropped out of a window. In the search of the apartment, Modica retrieved a third item (a plastic bag containing one "off white colored rock") from a bedroom.[24] Charles Kron, an expert in the field of analysis of controlled dangerous substances, testified that all of those three items tested positive for cocaine.[25] Modica also testified that an "off white colored rock" was recovered by another officer from the woman seen engaging in the hand-to-hand transaction with petitioner.[26] Modica testified that the cocaine in this case was consistent with drugs packaged for sale and that the amount of cocaine seized during the arrest was inconsistent with an amount intended for personal use.[27] This evidence, when viewed in the light most favorable to the prosecution, was alone sufficient for any rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt.

---

[24] State Rec., Vol. III of V, transcript of July 9, 2008, pp. 80-95 and 103.

[25] State Rec., Vol. III of V, transcript of July 9, 2008, pp. 56-62.

[26] State Rec., Vol. III of V, transcript of July 9, 2008, p. 94.

[27] State Rec., Vol. III of V, transcript of July 9, 2008, pp. 99 and 101-02.

For these reasons, petitioner's claim clearly has no merit and should be denied on the merits.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Edward McMillan be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[28]

New Orleans, Louisiana, this seventeenth day of October, 2012.



        **SALLY SHUSHAN**
        **UNITED STATES MAGISTRATE JUDGE**

---

[28] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.